**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

DARIUS GLEN ROCKWARE,

    Plaintiff,

v.

ETZ HAYIM HOLDING, INC. d/b/a
LAZARUS NATURALS AND WILLIAM
GERMANO,

    Defendants.

Civil Action No. 20-4389 (MAS) (DEA)

**MEMORANDUM ORDER**

This matter comes before the Court upon Defendant ETZ Hayim Holding, Inc. d/b/a Lazarus Naturals's ("Defendant") Motion to Compel Arbitration and Dismiss the Complaint (ECF No. 6).[1] Plaintiff Darius Glen Rockware ("Plaintiff") opposed (ECF No. 13) and Defendant replied (ECF No. 14).

Plaintiff resides in Phillipsburg, New Jersey.[2] (Compl. ¶ 1, Ex. A to Notice of Removal, ECF No. 1.) Defendant represents to the Court that it maintains its principal place of business in

---

[1] Defendant asserts that although its employee, William Germano, is named in the Complaint, Plaintiff "has not properly or effectively served Mr. Germano." (Def.'s Moving Br. 1 n.1, ECF No. 6-1.) Plaintiff's Opposition does not challenge this assertion or otherwise allege that Germano has been properly served with process. Accordingly, at this time, the Court's Memorandum Order only considers Plaintiff's claims against Defendant ETZ Hayim Holding, Inc. *Cf. Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."). The Court does not reach the question of whether or not Germano has been properly served.

[2] Defendant "bases its motion to compel arbitration on language in the parties' contracts. Those contracts, though not appended to the Complaint, are integral to . . . the Complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014). Because the arbitration clause at issue appears in a contract integral to the Complaint, "we resolve the motion to compel

1

the State of Washington and is also incorporated there. (Notice of Removal ¶ 6, ECF No. 1.) Plaintiff "was hired as Regional Sales Manager, East by [Defendant] on or around January 28, 2019. His job duties involved overseeing and building [Defendant's] east coast sales and distribution operations, including those in New Jersey. [Plaintiff's] position involved frequent travel and calls from his residence in Warren County, New Jersey." (Compl. ¶ 7.) In his Opposition, Plaintiff alleges that "at all times" he "worked out of his home office in Warren County, New Jersey." (Pl.'s Opp'n Br. 2.) Plaintiff alleges that Defendant terminated his employment due to his age, in violation of the New Jersey Law Against Discrimination ("NJLAD"). (Compl. ¶¶ 13-19.) He also brings claims against Defendant's employee, William Germano, for allegedly aiding and abetting Defendant's NJLAD violations. (*Id.* ¶¶ 19, 25.)

The Motion before the Court concerns the enforceability of the arbitration clause in Plaintiff's Employment Agreement. (*See* Employment Agreement § 19, Ex. B to Def.'s Mot. to Compel Arbitration, ECF No. 6-2.) Defendant argues that "[p]ursuant to the [a]rbitration [p]rovision . . . Plaintiff agreed to arbitrate all employment-related claims against Defendant." (Def.'s Moving Br. 1.) Furthermore, Defendant notes that the "Employment Agreement contains a choice of law provision that identifies the laws of the State of Washington as controlling." (*Id.*) Defendant argues that "the State of Washington has a strong policy favoring arbitration" and the "application of Washington law would likewise lead to enforcement of the [a]rbitration [p]rovision." (*Id.* at 5 (citing *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810 (Wash. 2009)) (citations omitted).) For his part, Plaintiff argues that the Court must not give effect to the Employment Agreement's choice of law provision because the clause conflicts with New Jersey

---

arbitration under a motion to dismiss standard, and accept as true the factual allegations set forth in the Complaint." *Id.* "We are also permitted to consider the substance of the contracts that ostensibly compel arbitration." *Id.*

2

public policy. Plaintiff maintains that "New Jersey has an overriding and compelling public interest in ensuring that its residents are protected under the provisions of the NJLAD, which is explicitly aimed at preventing discrimination against inhabitants of the [s]tate." (Pl.'s Opp'n Br. 13 (internal citation and quotation marks omitted).) According to Plaintiff, "enforcing the choice of law provision in this matter would conflict with this overriding policy since it would preclude [him] from asserting his statutory rights and protections under the NJLAD." (*Id.*)

"[A] court sitting in diversity will apply the choice-of-law principles of the forum state (here, New Jersey)." *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 131 (D.N.J. 2020). "New Jersey gives effect to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Schunkewitz v. Prudential Secs. Inc.*, 99 F. App'x 353, 355 (3d Cir. 2004) (citation omitted).

Applying New Jersey's choice of law principles, the Court agrees that if, in fact, Plaintiff is found to have been employed within New Jersey, the Employment Agreement's choice of law provision cannot be read to prevent him from bringing his NJLAD claims. "New Jersey courts have consistently applied the law of the *state of employment* to claims of workplace discrimination." *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) (citation omitted). "These principles have been applied repeatedly in cases brought by New Jersey residents against out-of-state-employers, with courts consistently holding that the 'claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-state employment is governed by the law of the state in which she was employed.'" *Id.* (citation omitted); *see, e.g.*, *McDonnell v. Illinois*, 725 A.2d 126, 134 (N.J. Super. Ct. App. Div. 1999) (finding that plaintiff had a right to NJLAD's substantive anti-discrimination protections where he was a New Jersey resident, working in New Jersey for an Illinois-based employer with a New Jersey office), *aff'd*, 748 A.2d

3

1105 (N.J. 2000). Public policy considerations prevent New Jersey residents from waiving their substantive rights under the NJLAD through contractual choice of law provisions that invoke another state's law. *See* James H. Walzer, 52 N.J. Prac. Series Elements of Action § 22:3 (Oct. 2020 ed.) (observing that New Jersey courts are often "more cautious when the parties' choice-of-law selection may have adverse implications on an employees' ability to assert claims under New Jersey's employment law statutes. Indeed, as a matter of New Jersey public policy, courts do not permit employees to waive their substantive rights under such statutes." (citing *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 540-41 (N.J. 2016))). New Jersey courts have held that allowing residents employed within the state to waive the statutory protections of the NJLAD would be "contrary to the public policy" goal expressed in the NJLAD—"the elimination of discrimination." *Rodriguez*, 138 A.3d at 540-41 (holding that public policy considerations prevented a plaintiff from contractually waiving substantive NJLAD provisions relating to the law's statute of limitations period); *see also Roman v. Bergen Logistics, LLC*, 192 A.3d 1029 (N.J. Super. Ct. App. Div. 2018) (holding that public policy considerations prevented plaintiff from contractually waiving substantive provisions related to the NJLAD's statutory right to punitive damages).

The Court notes, however, that Defendant's Motion does not argue that the choice of law provision prevents Plaintiff from bringing his NJLAD claims. Indeed, Defendant maintains that "enforcement of the plainly written choice of law provision in the Agreement that both parties agreed to . . . would *not* stop Plaintiff from pursuing his claims under New Jersey's discrimination laws." (Def.'s Reply Br. 2 (emphasis added).) Rather, Defendant only argues that Washington law requires Plaintiff to arbitrate his NJLAD claims. (Def.'s Moving Br. 1.)

Plaintiff argues that New Jersey's "choice of law rules require that New Jersey law be applied to determin[e] the enforceability of the arbitration provision at issue." (Pl.'s Opp'n Br. 6-7). This contention is incorrect, however. Even when considering NJLAD employment claims, New Jersey courts generally construe an arbitration clause within an applicable employment agreement in accordance with any choice of law provision contained therein. *See, e.g., Helfand v. CDI Corp.*, 2012 WL 95591, at *5 (N.J. Super. Ct. App. Div. Jan. 13, 2012) (finding in an NJLAD employment discrimination case construing an employment agreement's arbitration provision's enforceability that "because the contract contains a choice-of-law provision, Pennsylvania contract law should be used"). This is consistent with Third Circuit precedent, requiring that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 521 (3d Cir. 2019) (alteration in original) (citation omitted). The fact that an arbitration clause may require Plaintiff to arbitrate his NJLAD claims if it were construed under the Employment Agreement's choice of law provision is of no moment. This is true so long as Plaintiff's claims can be vindicated through an arbitral forum. *Cf. Martindale v. Sandvik, Inc.*, 800 A.2d 872, 882 (N.J. 2002) (holding that "having agreed to arbitrate, the parties should be bound to that agreement unless . . . the statutory claim cannot be vindicated in an arbitral forum.").

Here, the Employment Agreement clearly provides that the "validity, construction[,] and performance of this Agreement shall be governed by the laws of the State of Washington." (Employment Agreement § 18.) Consistent with *Helfand* and *Martindale*, the Court will give effect to this choice of law provision in the absence of any reason to believe that Plaintiff's NJLAD claims cannot be brought in an arbitral forum if Washington law were to apply. Finding no such

argument in Plaintiff's Opposition, the Court finds that the arbitration provision will be interpreted under Washington State law. Having concluded that Plaintiff can avail himself of the NJLAD's substantive protections even if Washington law requires him to arbitrate these claims, the Court will not address Plaintiff's contention that the arbitration clause is insufficient under New Jersey law. *Cf. Rizzo v. Island Med. Mgmt. Holdings, LLC*, A-0554-17T2, 2018 WL 2372372, *4 (N.J. Super. Ct. App. Div. May 25, 2018) ("Because we find the terms of the forum selection clause clearly and unambiguously established New York law would control disputes related to plaintiff's employment, we need not address plaintiff's contention that the arbitration clause is insufficient under New Jersey law.").

Under Washington law, "the party seeking to avoid arbitration has the burden to show that the arbitration clause is unenforceable." *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013) (en banc). "Further, both state and federal law strongly favor arbitration and require all presumptions to be made in favor of arbitration." *Id.* Here, the Employment Agreement's arbitration clause provides that, except for applications for injunctive relief, the "Agreement shall be enforced in accordance with the Uniform Arbitration Act, the enforcement provisions of which are incorporated by this reference." (Employment Agreement § 19.) "Matters to be resolved under these procedures also include claims and disputes arising out of statutes such as . . . the Age Discrimination in Employment Act . . . and any federal, state[,] or local law against discrimination." (*Id.*) Moreover, Plaintiff agreed that Section 19 would "be the sole and exclusive procedure for the resolution of any disputes" relating to his employment or provisions of the Agreement. (*Id.*) While the bulk of Plaintiff's Opposition argues the arbitration provision is deficient under New Jersey law, Plaintiff cites no Washington law requiring the Court to disregard the plain meaning of the arbitration provision. Accordingly, the Court finds that Plaintiff has failed

to meet his burden under Washington law to demonstrate that the arbitration clause is unenforceable. The Court, therefore, finds the arbitration provision is valid under Washington State law.

Accordingly, **IT IS** on this 23rd day of December 2020 **ORDERED** that:

1. Defendant's Motion to Compel Arbitration is **GRANTED**.
2. Defendant's Motion to Dismiss Plaintiff's claims with prejudice is **DENIED**.
3. The Clerk is directed to **STAY** and administratively terminate this matter pending the completion of arbitration.[3]

                                                                                                             /s/ Michael A. Shipp

                                                                                                      **MICHAEL A. SHIPP**
                                                                                                       **UNITED STATES DISTRICT JUDGE**

---

[3] *Cf. Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 710-12 (3d Cir. 2009) (discussing, *inter alia*, Section 3 of the Federal Arbitration Act, which "imposes a mandatory stay").